### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 1:06-mj-483** |
| | : | |
| **v.** | : | |
| | : | |
| **AIDA NIANG,** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in aid of sentencing. For the reasons set forth herein, the government respectfully recommends that the Court impose a sentence within the Sentencing Guidelines.

**I.       BACKGROUND**

On January 9, 2007, the United States Attorney's Office for the District of Columbia filed a one count Information charging the defendant with Bank Embezzlement, 18 U.S.C. § 656, a Class A misdemeanor. On January 29, 2007, the defendant, Aida Niang, pled guilty to the one count Information. As part of her plea, the defendant agreed that the following facts would have been established beyond a reasonable doubt had this case gone to trial:

Beginning in or about November 2005, through up to and including March 2006, Aida Niang worked as a teller at M & T Bank at 3464 Georgia Avenue, N.W. in Washington, D.C. At all relevant times, M & T Bank was a financial institution operating in the District of Columbia and elsewhere with deposits insured by the Federal Deposit Insurance Corporation.

At all times relevant to this matter, Ms. Niang was an employee-teller at M & T Bank at its 3464 Georgia Avenue, N.W. location - a branch within the District of Columbia. Beginning in or about January 2006, and continuing up to in or about March 2006, Ms. Niang executed a

scheme to embezzle money, that is, United States currency, from M & T Bank by using her position as a teller to gain access to cash and willfully embezzle, abstract, purloin and steal money by removing U.S. currency from teller drawers under her control and converting the money to her own use.

On approximately three occasions from in or about January 2006, and continuing up to in or about March 2006, Ms. Niang willfully and knowingly removed U.S. Currency from the teller drawer under her control. Ms. Niang hid her theft by creating bogus transactions. Ms. Niang would key in non-existent transactions to keep her cash drawer in balance. Ms. Niang would debit customers' accounts and then later void the transaction. On March 17, 2006, Ms. Niang put through a bogus transaction that she forgot to void which resulted in the M & T customer Clifton King being debited one thousand nine hundred dollars ($1,900) for a cash withdrawal that he did not make. Specifically, during these three months, a teller drawer under Ms. Niang's control was missing a total of five thousand seven hundred sixty eight dollars ($5,768) and she misappropriated funds from customer's account in the amount of  one thousand nine hundred dollars ($1,900).

On or about March 30, 2006 and September 28, 2006, bank officials and FBI Agent K. Bender, respectively, interviewed Ms. Niang about the withdrawal from a customer's account that he did not make and shortages in the teller drawer under Ms. Niang's control. Ms. Niang admitted that on three occasions she embezzled currency from M & T Bank by removing substantial currency from the teller drawer under her control to pay for the burial of her cousin in Africa. Since her discharge, Ms. Niang has returned three thousand dollars ($3,000) to M & T Bank. Ms. Niang agrees to repay the remaining four thousand six hundred sixty eight dollars

($4,668) to M & T Bank.  Through her scheme, Ms. Niang has caused a loss of at least $7,668 to M & T Bank.

## II.    SENTENCING CALCULATION

### A.    Statutory Minimum/Maximum

The maximum term of imprisonment is one year for this Class A misdemeanor in violation of 18 U.S.C. § 656.  PSR at ¶ 56.

### B.    United States Sentencing Guidelines Calculation

The Presentence Report writer has calculated defendant's total offense level to be 6 and a criminal history category of I.  Thus, the defendant's Guidelines range for violation of 18 U.S.C. Section 656 would be 0 to 6 months of imprisonment.   PSR at ¶ 57.  Because the applicable Guidelines range is in Zone A of the Sentencing Table, the defendant would  be eligible for up to five years of probation.  PSR at ¶ 61.

### C.  The Impact of Booker

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory,  Title 18, United States Code, Section 3553(b)(1).  Booker, 543 U.S. at 258.  However, the Court expressly refused to invalidate the Guidelines in their entirety.  To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the

range as set forth in the Guidelines, the Court must state in a written order of judgment and

commitment the specific reason for the imposition of a sentence different from that described in

the Guidelines.  See 18 U.S.C. Section 3554(c)(2).  The sentence will then be subject to review

by courts of appeals for "reasonableness."  Id. at 261.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law

and correctly calculate a defendant's sentence under the existing Sentencing Guidelines.  See

Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report

or determine that resolution not necessary to sentencing).  "The district courts, while not bound

to apply the Guidelines, must consult those Guidelines and take them into account when

sentencing."  Booker at 262 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)).  In light of

this mandate – and the continued requirement of written explanations for sentences that fall

outside of the range called for by the Guidelines and the new standard of "reasonableness"

review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se.

Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the

goal, endorsed by both Congress and the Supreme Court, of meting out fair and uniform

sentences.

It thus remains true that, absent unusual circumstances, the sentence in a criminal case

should fall within the Guideline range as determined by this Court.  Each Supreme Court Justice

in the various opinions in Booker recognized the express national policy goals, as articulated by

Congress, that sentences be uniform across the country, to the extent possible, and that sentences

be based on the offender's actual conduct and history.  See, e.g., id. at 253 (majority opinion of

Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing

system in the direction of increased uniformity."); id. at 250 (same) ("Congress' basic statutory

goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial

efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of

conviction."); id. at 292 (dissenting opinion of Stevens, J.) ("The elimination of sentencing

disparity, which Congress determined was chiefly the result of a discretionary sentencing regime,

was unquestionably Congress' principal aim."); id. at 304-05 (dissenting opinion of Scalia, J.)

("the primary objective of the Act was to reduce sentencing disparity.").

Since the Guidelines currently represent the only existing benchmark to encourage

uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and

fairness, Guideline range sentences are currently the only mechanism available to implement

Congress' basic statutory goals.   This is so, said the court in United States v. Wilson, 350 F.

Supp.2d 910 (D. Utah 2005) – the day after Booker was decided – because the Guidelines

represent the product of an expert commission, that has studied the sentencing process at great

length, under the specific mandate of Congress, to fashion recommended sentences that carry out

the purposes defined by Congress.  The resulting Guidelines, Wilson held, plainly reflect the

public's will, as expressed by their democratically elected representatives, in that Congress has

repeatedly approved of the Guidelines or acted to adjust them to congressional preference.

Wilson further observed that guided sentencing appears to have had a positive impact in

deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as

well as punishment and fairness.  For all of these reasons, Judge Cassell determined that "the

court will give heavy weight to the Guidelines in determining an appropriate sentence.  In the

exercise of its discretion, the court will only depart from those Guidelines in unusual cases for

clearly identified and persuasive reasons." Id. at 950.  A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further in Section III below, no unusual circumstances exist that warrant an exception to the preference for Guidelines sentencing in this case.

## III.    DEFENDANT SHOULD BE SENTENCED WITHIN THE GUIDELINES

The Government recommends that the Court sentence the defendant to a Guideline sentence.  Such a sentence would not only be presumptively reasonable, for the reasons outlined in section II.C. above, but would also be justified by consideration of the sentencing factors enumerated in 18 U.S.C. § 3553.  Those factors fall into three main categories:  the nature of the offense, the needs of the public, and the history and characteristics of the defendant.  United States v. Ranum, 353 F. Supp.2d 984, 989 (E.D. Wis. 2005).

 Nature of the Offense and Needs of the Public.  The defendant's illegal conduct reveals that she is not a trustworthy person.  In this case, the defendant unlawfully took money belonging to her employer and made personal use of it.  In one instance, she took money from a personal account not belonging to her.  It is vital that the Court send a message to both the defendant and the community that embezzlement will not be tolerated.  Although no account holder suffered a personal loss in this scheme of embezzlement, this does not provide a license to the defendant or anyone to steal money from banks and should not be used as a basis for leniency in the sentence of the defendant.

<u>The history and characteristics of the defendant</u>.  The history and characteristics of the defendant reveals that she is a thief.  The defendant is a twenty six year old female whose employment history consists of working primarily in financial institutions.  From February 2004 until August 2005, the defendant worked for Bank of America.  Since August 2005, the defendant has worked for Fidelity Investment and BBT Bank in Fort Washington, Maryland.  Although social security records show that she earned $6,784.85 working at PNC Bank, we have been unable to confirm this.  The instant offense occurred during the defendant's employment with M & T Bank.  She currently works as a loan officer for a federal credit union.  Contact has been made with the aforementioned institutions and no one, except M & T Bank, will divulge the circumstances surrounding the cessation of the defendant's employment.

The defendant abuses credit.  She is a working woman who fails to meet her financial obligations.  The defendant's credit report reveals four unpaid accounts in collection; Sprint $484, Bank of Cach $520, Bank of America $334, and Comcast $234.  She has two charged off accounts at Bank of America for $466 and DriveFin Auto for $4,950.  Moreover, the defendant also has an open account in collection with Verizon for $956.

It is interesting that the defendant has chosen to work in financial institutions, but fail to meet her financial obligations.  The defendant understands and appreciates that financial institutions, including her current employer, need to know and assess the trustworthiness of employees because she has requested that her conviction for Embezzlement not be disclosed to her current employer.  She understands that such information would likely have a material consequence in her employment and seeks the government's participation in hiding such information from her employer.

-7-

The government urges this Court to sentence the defendant within the Guidelines, specifically fashioning a sentence that would require the defendant to disclose this conviction to her current and future employers (they have a right to know such information about an employee), make financial disclosures to her probation officer, seek approval prior to making applications for credit, meet an order for restitution in this case, and participate and complete credit counseling.  A guideline sentence would serve the interests of the community and give both the government and the defendant the benefit of the bargain negotiated.[1]

V.    **CONCLUSION**

The government recommends that this Court sentence the defendant within the Sentencing Guidelines.

Respectfully,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar


_____

Angela Hart-Edwards
Assistant United States Attorney
Federal Major Crimes Section
555 4th Street, N.W.  #4241
Washington, DC 20530
Phone: 307-0031; Fax: 514-6010
Pa. Bar No. 61468

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant via electronic filing and notification this 17th day of April, 2007.

_____

[1]  The government will continue to ascertain the circumstances surrounding cessation of the defendant's employment with all aforementioned financial institutions.

-8-

_____
Angela Hart-Edwrds
Assistant United States Attorney